UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JESSICA BORAK, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:20-cv-01103-MTS |
| KILOLO KIJAKAZI, *Acting Commissioner of the Social Security Administration*, | ) ) ) ) |
| Defendant. | ) ) |

# MEMORANDUM AND ORDER

This matter is before the Court for review of a final decision by Defendant, the Acting Commissioner[1] of the Social Security Administration, denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.*, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–85. Plaintiff alleges disability due to mental disorders and musculoskeletal disorders of her back. She alleges an onset date of March 2, 2017. An Administrative Law Judge ("ALJ") held a hearing, followed by a supplemental hearing, and issued a decision that Plaintiff was not disabled under the Act.[2] Having jurisdiction under 42 U.S.C. § 405(g), the Court will affirm the decision for the reasons explained herein.

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Acting Commissioner is substituted as the proper Defendant in this action.

[2] The Social Security Administration denied Plaintiff's applications for DIB and SSI. Afterwards, Plaintiff timely sought a hearing before an ALJ who issued an unfavorable decision after a hearing and a supplemental hearing on the matter. Plaintiff then filed a request for review of the ALJ's unfavorable decision with the SSA's Appeals Council, which denied review. Accordingly, the ALJ's decision stands as the Acting Commissioner's final decision.

I.      **Standard of Review and Legal Framework**

To be eligible for benefits under the Act, a claimant must prove she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552 (8th Cir. 1992). The Act defines a disabled person as someone who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." § 1382c(a)(3)(B).

The Commissioner engages in a five-step process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). "If [the] claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"—if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"—if so, then the Commissioner will proceed to the next step; if not, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner determines whether the

claimant's severe impairment or combination of impairments meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")—if so, then the claimant is disabled; if not, then the Commissioner will proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(e).

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), which is "the most [the] claimant can still do despite [his] physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant is able to perform past relevant work—if so, then the claimant is not disabled; if not then, the Commissioner will proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers whether there are alternative work opportunities in the national economy in light of the claimant's RFC, age, education, and work experience—if so, then the claimant is not disabled; if not, then the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

The claimant bears the burden of proof through Step Four of the analysis. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). However, if the claimant meets this burden and demonstrates he cannot perform his past work, then the burden of proof shifts to the Commissioner to establish at Step Five "that the claimant has the [RFC] to perform a significant number of other jobs in the national economy that are consistent with [his] impairments and vocational factors such as age, education, and work experience." *Phillips*, 671 F.3d at 702.

**II.     The ALJ's Decision**

The ALJ applied the five-step process outlined above. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 2, 2017, the date Plaintiff asserted her disability began. (Tr. 218). At Step Two, the ALJ found that Plaintiff had the following severe

impairments: degenerative disc disease, obesity, cannabis use disorder, depression, anxiety, attention-deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), and borderline personality disorder. (*Id.*). At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments in the Listings. The ALJ went through numerous Listings and, with citation to the record, explained why they were not met or equaled. (Tr. 219–20). At Step Four, the ALJ determined that Plaintiff was not able to perform any past relevant work. (Tr. 223–24). Finally, at Step Five, the ALJ concluded that Plaintiff had alternative work opportunities in the national economy in light of Plaintiff's RFC, age, education, and work experience, (Tr. 224–25), namely, laundry folder, food maker, and bander (Tr. 225). Accordingly, the ALJ determined that Plaintiff was not disabled under the Act.

**III.    Discussion**

Plaintiff contends that the ALJ erred in three ways. First, Plaintiff asserts the decision lacks a proper credibility evaluation. Next, Plaintiff argues that the ALJ erred by finding cannabis use disorder was a severe impairment. And, lastly, Plaintiff asserts that substantial evidence does not support the RFC.

    a.    *The ALJ made a proper credibility evaluation.*

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall*, 274 F.3d at 1218. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003); *accord Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010). The Court finds that the reasons offered by the ALJ in support of her analysis of Plaintiff's subjective complaints are based on substantial evidence.

Using the *Polaski* factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.

1984); *accord Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) ("The ALJ may discredit complaints that are inconsistent with the evidence as a whole." (internal quotations omitted)).  The *Polaski* factors include (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.  *Polaski*, 739 F.2d at 1322; *see also* 20 C.F.R. § 416.929(c)(3).  While the ALJ must consider the *Polaski* factors, she need not explicitly discuss each of them.  *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010); *Smith*, 756 F.3d at 625 (noting court will defer to ALJ's credibility determination if it was supported "by good reasons and substantial evidence even if every factor is not discussed in depth" (internal citation omitted)).

Here, the ALJ identified inconsistences that undermine Plaintiff's allegations of disabling impairments and cited to their place in the record.  Relevant to her mental symptoms, the ALJ noted that while the Plaintiff testified that she had trouble following instructions and needed daily reminders, she previously testified that she forgot to take her medication perhaps once every three months.  Records indicated she had an intact memory.  (Tr. 760).  Regarding her ability to focus, which she claimed was a struggle, the ALJ noted Plaintiff was still able to draw and write poetry.  Plaintiff also did sudoku puzzles, (Tr. 269), and records indicated Plaintiff typically was alert with intact attention and concentration, (Tr. 220).  As for her ability to interact with others, Plaintiff reported that she was regularly irritable, but she also got along with authority figures and never had been terminated from employment due to problems getting along with others.

Relevant to her physical symptoms, Plaintiff alleged that her back pain was so severe that she could not stand or walk without screaming and crying in pain.  She testified that she could not lift more than eight pounds and could not walk more than one-fourth of a mile.  A June 2017 x-ray of Plaintiff's lumbar spine was unremarkable.  (Tr. 787).  Magnetic resonance imaging

conducted in April 2019 showed disc herniations at L3-4, L 4-5, and L5-S1, (Tr. 222), but showed "nothing acute" and did not show anything that "requir[ed] surgical intervention," (Tr. 1352). In July 2019, Plaintiff went to the emergency room because of a "flare of her chronic back pain." (Tr. 1341). After receiving Valium and morphine she "still had difficulty walking secondary to pain," and "thus she was admitted for further treatment." (*Id.*). But the ALJ noted that just ten days after being discharged from the hospital, (Tr. 1348), Plaintiff returned to the hospital on July 19, 2019. This time, though, Plaintiff did not present with any back problems. Rather, she presented with only "heel pain and foot pain" caused by hitting her foot while she was "going down a water slide." (Tr. 1315).

Besides the glaring inconsistency of complaints of disabling back pain and careening down a waterslide, the ALJ also noted Plaintiff had numerous normal findings in physical examinations. Records note normal gait, normal muscle strength and tone, normal range of motion, and no loss of sensation, even though records show Plaintiff also reported pain with range of motion and tenderness at times. (Tr. 222). In addition, Plaintiff did not report problems in completing any physical tasks (e.g., lifting, bending, reaching) when she completed her Function Report. Plaintiff also still drove and attended an outdoor lawn concert, though she did experience pain and changed her position multiple times.

The ALJ found that Plaintiff had medically determinable impairments that reasonably could be expected to cause the symptoms Plaintiff reported but found that Plaintiff's statements regarding intensity, persistence, and the limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."). The Court concludes that the ALJ provided good reasons and substantial evidence supports it.

      b.    *Any error from concluding cannabis use disorder was a severe impairment is harmless.*

Plaintiff next argues that the ALJ erred when she listed cannabis use disorder as one of Plaintiff's severe impairments. The record establishes that Plaintiff used cannabis. *See, e.g.*, (Tr. 750) (testing positive for cannabinoids); (Tr. 759) (same); (Tr. 160) (noting Plaintiff had been smoking marijuana for pain, thought it was helping); (Tr. 179) (same). The record also indicates that she had been advised to refrain from drug abuse due to the risk of interactions between her medications and illicit drugs. *See, e.g.*, (Tr. 182, 1199). But the record, as far as the Court has seen, does not contain a medical specialist diagnosing, discussing, or noting cannabis use disorder specifically. An ALJ cannot draw improper inferences from the record or substitute a doctor's opinion for her own. *Adamczyk v. Saul*, 817 F. App'x 287, 289 (8th Cir. 2020). Plaintiff's documented use of marijuana may have been relevant for some purposes, but there does not appear to be any record evidence that cannabis use disorder was a severe impairment to Plaintiff.

Defendant maintains that if the ALJ's listing of this additional severe impairment was an error, though, it was harmless. The Court agrees. Plaintiff never articulated how the ALJ's determination that Plaintiff had this additional impairment harmed her. Indeed, Plaintiff did not even file a Reply brief responding to Defendant's argument that the error was harmless. The Court sees no indication that the ALJ would have decided differently had this small conclusion not been made. *See Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021) (explaining "reversal of an ALJ's decision is not required if an error was harmless, meaning there is no indication that the ALJ would have decided differently if the error had not occurred" (internal quotations and alterations omitted)).

      c.      *Substantial evidence supports the RFC.*

Plaintiff's final argument is that "the evidence supports a more restrictive RFC than found by the ALJ decision." Doc. [24] at 15. After reviewing the record as a whole, the Court disagrees with that summation. But even if the Court agreed and was inclined to have reached a different decision than the ALJ reached, the ALJ's weighing of the evidence here squarely fell within the available "zone of choice." *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

Plaintiff does not point to any evidence in the record that the ALJ should have considered, but failed to consider, in calculating Plaintiff's RFC. Rather, Plaintiff argues that the ALJ's reliance on the opinion of Stephen Scher, Ph.D., a State-Agency physician, cannot be considered substantial evidence because Dr. Scher gave the opinion approximately sixteen months before Plaintiff's first hearing. There is no regulation that restricts the ALJ from relying on medical evidence within specific time periods. As has been noted by courts often, there will always be some time lapse between medical reports and a claimant's hearing and decision. *See, e.g.*, *Young v. Saul*, 4:19-cv-003345-SEP, 2021 WL 2255001, at *5 (E.D. Mo. June 3, 2021). There are certain circumstances where a lapse in time can impact the persuasiveness of a medical opinion. *See, e.g.*, *Naumann v. Kijakazi*, 4:20-cv-1048-MTS, 2022 WL 670134, at *8 (E.D. Mo. Mar. 7, 2022); *see also McCoy*, 648 F.3d at 615 (explaining that the opinion of a non-examining consulting physician can be afforded less weight "if the consulting physician did not have access to relevant medical records including relevant medical records made after the date of evaluation"). But there was nothing prohibiting the ALJ from considering Dr. Scher's opinions in forming the RFC, especially since Dr. Scher's opinion was rendered after Plaintiff's alleged disability onset date, (Tr. 295), and the ALJ also considered substantial other evidence along with it.

Plaintiff further argues that substantial evidence does not support the RFC because the ALJ failed to include all the limitations given by Medical Expert Michael Lace, Psy.D.  Dr. Lace opined that Plaintiff should be limited to simple tasks, have only occasional contact with others, have no fast-paced production line tasks, and work at a single location.  The ALJ found Dr. Lace's opinion to be mostly consistent with the record as a whole and persuasive.  The ALJ did not, though, include the limitation of working at one location in the RFC.  To begin with, the ALJ was free to disregard portions of Dr. Lace's opinion that were not supported by the medical evidence as a whole.  *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007); *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).  But even if this omission of the single location limitation were an error, there is no indication that the jobs provided by the vocational expert would have been precluded.  Nor does the Dictionary of Occupational Titles note the need to work at multiple locations for the jobs the vocational expert cited.

Plaintiff's arguments against the ALJ's RFC finding are unavailing, and a review of the record as a whole has satisfied the Court that substantial evidence supported the RFC.

### Conclusion

Having reviewed the entire record, the Court finds that substantial evidence supports the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

Dated this 21st day of April, 2022.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE